IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Francis Luna-Lara,<br><br>    Petitioner,<br><br>vs.<br><br>United States of America,<br><br>    Respondent. | No. CV-16-01532-PHX-ROS (MHB)<br><br>CR 03-01097-4-PHX-ROS<br><br><br>**REPORT AND RECOMMENDATION** |

TO THE HONORABLE ROSLYN O. SILVER, UNITED STATES DISTRICT JUDGE:

       Petitioner Francis Luna-Lara, an inmate currently incarcerated in the Federal Bureau of Prisons, has filed a *pro se* Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. §2255 (hereinafter "2255 motion"), and Memorandum of Law in Support of Relief (Docs. 1, 4). On June 17, 2016, the Court appointed the Federal Public Defender's Office to represent Petitioner and granted leave for Counsel to file an Amended 2255 motion (hereinafter "amended 2255 motion"). (Doc. 5.) On June 27, 2016, Petitioner, through counsel, filed an amended 2255 motion. (Doc. 8.) In his amended 2255 motion, Petitioner asserts one ground for relief: that the statutory language under which he was convicted was held unconstitutional in Johnson v. United States, 135 S.Ct. 2551 (2015), and that therefore his conviction must be vacated.

      On September 26, 2016, Respondent filed a Motion to Stay Further Proceedings on the Motion to Vacate Sentence. (Doc. 13.) On October 11, 2016, Petitioner filed a Response, and on October 28, 2016, Respondent filed a Reply. (Docs. 19, 24.)

**BACKGROUND**

On October 22, 2003, Petitioner was charged with other defendants by Indictment with four felony counts: conspiracy to commit hostage taking, hostage taking and aid and abet, conspiracy to harbor illegal aliens, and harboring illegal aliens. (CRDoc. 1[1].) On September 22, 2005, Petitioner pled guilty to an Information charging him with the crime of possession (Brandishing) a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. §924(c)(1)(A)(ii). (CRDoc. 111-1.) Specifically, the Information alleged that Petitioner "did possess and brandish a firearm, during and in relation to a crime of violence, that is, Hostage Taking." (CRDoc. 108.) The plea agreement contained a sentencing stipulation that Petitioner be sentenced to between 20 and 25 years in prison. (CRDoc. 111-1 at 2.) The Government agreed to dismiss the four counts in the Indictment. Petitioner also agreed to waive his appeal and post-conviction rights. (Id. at 3-4.)

The plea agreement set forth the elements of the crime:

1. The defendant committed the crime of hostage taking (a crime of violence) which has the following elements: (a) The defendant knowingly and intentionally seized or detained or threatened to kill or to injure, or to continue to detain a person, (b) In order to compel a third person [to] do any act as an explicit and implicit condition for the released of the person seized and detained; and (c) Neither the defendant nor any of the victims were nationals or citizens of the United States:

2. The defendant knowingly possessed a firearm;

3. The defendant brandished the firearm during and in relation to a crime of violence[2], in this case, hostage taking; and

4. The offense occurred in the District of Arizona.
(CRDoc. 111-1 at 5-6.)

---

[1]Hereinafter, "CRDoc." refers to docket entries in the underlying criminal case, CR 03-01907-PHX-ROS, and "CVDoc." refers to docket entries in this 2255 proceeding, CV 16-01532-PHX-ROS (MHB).

[2]"Crime of violence is defined as "an offense that is a felony and (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. §924(c)(3).

1   Petitioner agreed that the following facts could be proven at trial beyond a reasonable
2   doubt:

3   On more than one occasion on or about October 13, 2003, through on or about October 13, 2003, in the District of Arizona, I knowingly and intentionally possessed and brandished a firearm, a .38 Smith & Wesson. During the time that I possessed and brandished the firearm, I committed the crime of Hostage Taking, a violation of Title 18, United States Code, Section 1203.  Specifically, I agreed with others to detain at least 12 undocumented aliens and then threatened to kill, seriously injure or continue to detain these aliens in order to compel a third person or persons to pay a fee for the aliens' release.

During an unknown date in October 2003 through my arrest on October 16, 2003, I, and others, guarded illegal aliens at a residence located at 2114 W. Colter Street, Phoenix, Arizona.  We all knew the aliens were undocumented. The fact that the aliens were in the United States makes them vulnerable victims.  The undocumented aliens were brought to the residence by people who guided them into the United States. Once at the residence, the aliens were not allowed to leave and were guarded at all times.  When the undocumented aliens arrived at the residence they were forced to provide phone numbers of friends or relatives so that those people could be contacted by phone to pay a ransom for the victim's release.  Once contacted the friends or relatives were directed to send money via Western Union.

My co-conspirators and I had different roles in the holding of the undocumented aliens hostage including guiding the aliens into the United States, picking up the aliens and bringing them to 2114 W. Colter Street, guarding the aliens, contacting the relatives or sponsors of the aliens for the smuggling fee, collecting the smuggling fee from Western Union, and delivering the aliens after payment was made.  While at the residence, I guarded the aliens with a revolver so that they would not make any noise or be discovered. I, along with co-conspirators, Daniel Samaniego-Cachon, and man known to me as "Armando", sexually assaulted some of the female victims at the residence.  A man named "Oscar" was in charge of the house.

19  (CRDoc. 111-1 at 6.)

20   On January 23, 2006, the court rejected the plea agreement.  (CRDoc. 140.)  Upon
21  request for reconsideration, the court reinstated the plea agreement. (CRDoc. 159.) On June
22  9, 2016, Petitioner was sentenced to a term of 25 years in prison, his sentence to run
23  concurrently to a state sentence he was also serving. (CRDoc. 166.) An amended judgment
24  was filed on August 2, 2016, to reflect that Petitioner would receive credit for time served
25  to date from his October 2003 incarceration pursuant to the state matter. (CRDoc. 172.)
26  \\\
27  \\\
28

**STAY MOTION**

Respondent moves to stay its deadline to respond to Petitioner's amended 2255 motion pending the Ninth Circuit's forthcoming decision in United States v. Begay, No. 14-10080, and the Supreme Court's decision as to whether to grant certiorari in Lynch v. Dimaya, No. 15-1498. (CVDoc. 13.) Since the filing of Respondent's motion, on September 29, 2016, the Supreme Court granted certiorari in Dimaya. Respondent asserts that the Ninth Circuit, in Begay, "submitted for decision on May 26, 2016, will address whether second degree murder is a crime of violence for purposes of a §924(c) conviction, and how Johnson impacts the analysis." (Id. at 1.) As Petitioner's underlying crime of violence was hostage taking, Respondent asserts that "Begay will be instructive in determining how Johnson will impact §924(c) convictions associated with those crimes, as well." (Id.) Respondent advises that "Begay should be decided any day now." (Id. at 5.)

Respondent also states that in Dimaya, the Supreme Court has been asked to "decide whether the residual clause of 18 U.S.C §16(b), which is identical to the residual clause of §924(c)(3)(B) that Petitioner necessarily challenges here, is unconstitutional for the same reasons as the residual clause in Johnson."[3] (CVDoc. 13 at 2.) Under the "General Provisions" section of Title 18, section 16 defines "crime of violence," and contains a (b) section identical to section 24(c)(3)(B). This "residual clause" is similar (but not identical) to the residual clause of the Armed Career Act, found unconstitutional in Johnson. The Ninth Circuit, applying Johnson, found section 16(b) to be unconstitutionally vague. Dimaya, 803 F.3d at 1120. Thus, it follows that the Supreme Court's decision on certiorari will control

---

[3]Circuits have split on this issue: Compare United States v. Gonzalez-Longoria, No. 15-400401, – F.3d –, 2016 WL 4169127, at *2-*5 (5th Cir. Aug. 5, 2016) (*en banc*) (holding 18 U.S.C. §16(b) to be unconstitutionally vague); United States v. Hill, No. 14-3872, – F.3d –, 2016 WL 4120667 at *7-*12 (2d Cir. Aug. 3, 2016) (holding 18 U.S.C. §924(c)(3)(B) to be not unconstitutionally vague); United States v. Taylor, 814 F.3d 340 (6th Cir. 2016) (same), with United States v. Vivas-Ceja, 808 F.3d 719 (7th Cir. 2016) (holding 18 U.S.C. §16(b) to be unconstitutionally vague) and Dimaya (same).

- 4 -

1 this Court's analysis of Petitioner's amended 2255 motion claim.  Respondent therefore
2 requests a stay of "short duration" pending the outcomes of <u>Begay</u> and <u>Dimaya</u>.  (<u>Id.</u>)

3      In his Response, Petitioner argues that, because Respondent intends to assert
4 affirmative defenses (appeal waiver, timeliness) that would not be effected by decisions in
5 <u>Begay</u> and <u>Dimaya</u>, a stay would delay resolution of these affirmative defenses.  (CVDoc.
6 19 at 3.) Petitioner also cites <u>Yong v. INS</u>, 208 F.3d 1116, 1120-21 (9th Cir. 2000) for the
7 proposition that "[a] stay is not justified in a habeas case simply to await an appellate court's
8 ruling on a controlling issue of law."  (<u>Id.</u> at 4.)  Additionally, Petitioner asserts that the
9 decision in <u>Begay</u> will not necessarily be controlling in this case, as the predicate offense in
10 <u>Begay</u> is second-degree murder, which "can be committed recklessly," and that the crime of
11 hostage taking requires specific intent.  (<u>Id.</u>)

12     As to the <u>Dimaya</u> case, Petitioner asserts that there "is no guarantee that the Supreme
13 Court, as currently constituted, will issue a precedential opinion." (CVDoc. 19 at 5.)  If the
14 Court is still comprised of eight Justices at the time of the decision, Petitioner argues, there
15 is a chance that the Court would split on the issue, and the appellate decision would simply
16 stand.

**ANALYSIS**

18     A court's power to stay proceedings pending the resolution of another case is
19 "incidental to the power inherent in every court to control the disposition of the causes on its
20 docket with economy of time and effort for itself, for counsel, and for litigants."  <u>Landis v.</u>
21 <u>North American Co.</u>, 299 U.S. 248, 254 (1936).  "A trial court may, with propriety, find it is
22 efficient for its own docket, and the fairest course for the parties to enter a stay of an action
23 before it, pending resolution of independent proceedings which bear upon the case."  <u>Leyva</u>
24 <u>v. Certified Grocers of California</u>, 593 F.2d 857, 863 (9th Cir. 1979).  In determining whether
25 a stay is appropriate, the court must weigh "the competing interests which will be affected by
26 the granting or refusal to grant a stay."  <u>Lockyer v. Mirant Corp.</u>, 398 F.3d 1098, 1109 (9th
27 Cir. 2005) (citing <u>CMAX, Inc. v. Hall</u>, 300 F.2d 265, 268 (9th Cir. 1962).  The "proponent
28 of a stay bears the burden of establishing its need."  <u>Clinton v. Jones</u>, 520 U.S. 681, 709

1  (1997) (citing Landis, 299 U.S. at 255). If there is "even a fair possibility" of harm to the
2  opposing party, the moving party "must make out a clear case of hardship or inequity in being
3  required to go forward." Lockyer, 398 F.3d at 1112 (citing Landis, 299 U.S. at 254). In
4  habeas cases, "special considerations" are implicated "that place unique limits on a district
5  court's authority to stay a case in the interests of judicial economy." Yong, 208 F.3d at 1120.
6  If a stay is especially long or its term is indefinite," the Court "require[s] a greater showing
7  to justify it." Id. at 1119.

8        The Court finds that a stay pending the resolution of Dimaya is warranted. Petitioner
9  does not dispute that the Supreme Court decision in that case will be controlling authority on
10 the issue raised by Petitioner. If eight justices comprise the Supreme Court, and the vote is
11 split, as speculated by Petitioner, he could of course move to have the stay lifted, and the
12 Court would decide the issue on existing Circuit authority. The stay would be of limited
13 duration as the Supreme Court has granted certiorari and the case will thus be heard during
14 the Court's October 2016 term, resulting in a decision by June, 2017. This contemplated stay
15 would not substantially injure the parties interested in the proceeding. Hinton v. Braunskill,
16 481 U.S. 770, 776 (1987). This is not an "indefinite, and potentially lengthy stay" envisioned
17 by the court in Yong, 208 F.3d at 1120-21 (considerations of judicial economy do not justify
18 indefinite, lengthy stay). Although the interests of judicial economy will not overcome an
19 "indefinite, potentially lengthy stay," such interests may indeed balance in favor of a "short
20 stay" of limited duration. Id. at 1120. Petitioner concedes that "it is entirely possible" that
21 a decision by the Supreme Court in Dimaya could be rendered prior to this court ultimately
22 ruling on his amended 2255 motion, were a stay not imposed.

23       Recently, the Ninth Circuit ordered two cases stayed pending the outcome of Beckles
24 v. United States,[4] No. 15-8544, – U.S. –, 136 S.Ct. 2510, 2016 WL 1029080 (*cert.* granted
25 June 27, 2016), but later lifted the stays based upon the fact that the defendants could

---

[4]Beckles will resolve a Circuit split and address whether Johnson's constitutional holding applies to the "crime of violence" residual clause of U.S.S.G. §4B1.2(a)(2), and whether it does so retroactively on collateral review.

- 6 -

1  realistically serve out the sentences they were contesting before <u>Beckles</u> is decided. <u>See</u> <u>Jacob</u>
2  <u>v. United States</u>, No. 15-73302 (Docs. 36, 39); <u>Gardner v. United States</u>, No. 15-72559 (Docs.
3  39, 42). The Ninth Circuit has also suggested that the district courts stay proceedings pending
4  the outcome of <u>Begay</u>. <u>See</u>, <u>Wilson v. United States</u>, No. 15-73778, ECF Doc. 11 (June 1,
5  2016). Courts in this District have stayed 2255 motions pending the outcome of <u>Beckles</u>.
6  <u>See</u>, Doc. 20, <u>Arnold v. United States</u>, No. CV-16-1839-PHX-SMM (DKD) (D.Ariz. Nov.
7  3, 2016) (noting that the "Supreme Court has yet to decide . . . whether <u>Johnson</u> . . . applies
8  at all in the context of 18 U.S.C. []924(c), . . . but has taken up these issues in <u>Beckles</u> and
9  <u>Dimaya</u>."); Doc. 16, <u>Grant v. United States</u>, No. CV-16-02057-PHX-JAT-(BSB) (D.Ariz.
10 Oct. 31, 2016) (also staying matter pending decision in <u>Dimaya</u>); Doc. 14, <u>Hatch v. United</u>
11 <u>States</u>, CV-16-02041-PHX-JJT (MHB) (D.Ariz. Oct. 21, 2016).

12  Approximately forty 2255 motions have been filed in this District challenging 924(c)
13 convictions under <u>Johnson</u>. For every case in which a stay is not granted, responses and
14 replies must be filed, reports and recommendations must ensue, objections may be filed, and
15 final orders must be entered. Additionally, supplemental pleading will be required as the law
16 evolves and other cases are decided on similar issues. A stay of these proceedings pending
17 the outcome of <u>Begay</u> and <u>Dimaya</u> will give the Court clear guidance on resolving the merits
18 of the claims, and avoid substantial effort and rounds of litigation that could be undone in the
19 midst of, or at the conclusion of the litigation, by an adverse decision.

20  Petitioner argues that a stay would be prejudicial to the resolution of the affirmative
21 defenses Respondent may assert (appeal waiver, timeliness). While Petitioner is technically
22 correct, this is not persuasive, as the resolution of Respondent's affirmative defenses does not
23 affect the stay analysis as to the merits. If the affirmative defenses are upheld, Petitioner's
24 amended 2255 motion would be dismissed, or, Petitioner would appeal, and any merits review
25 would occur only if his appeal was successful. If the affirmative defenses are denied, the
26 Court would still have to resolve the merits. Petitioner demonstrates no prejudice by having
27 to await a decision on the affirmative defenses pending Supreme Court guidance on the
28 merits. Additionally, Respondent asserts that any retroactivity argument it makes will also

1 be informed by the outcome of <u>Dimaya</u>, as the Supreme Court may address whether its

1  be informed by the outcome of <u>Dimaya</u>, as the Supreme Court may address whether its
2  decision announces a new rule as to the residual clause of 924(c), such that the timeliness
3  exception of 18 U.S.C. §2255(f)(3) applies.

4       For all of the above reasons, staying further briefing on this matter is within the public
5  interest and promotes judicial efficiency and consistency.  A stay will not result in undue
6  delay or prejudice Petitioner, and will not be lengthy or indefinite.  This Court will
7  recommend that the request for a stay be granted in part, in that the Court should stay the
8  matter until the Supreme Court renders a decision in <u>Dimaya</u>  The Court further recommends,
9  as Petitioner has asserted that the decision in <u>Begay</u> may not be controlling, that the stay be
10 without prejudice to the parties to seek to have the stay lifted should the Ninth Circuit's
11 decision in <u>Begay</u> warrant it.

12      **IT IS THEREFORE RECOMMENDED** that Respondent's Motion to Stay Further
13 Proceedings on the Motion to Vacate Sentence (Doc. 13) be granted.

14      **IT IS FURTHER RECOMMENDED** that the Court order Respondent to file its
15 opposition or other response to Petitioner's amended 2255 motion no later that 30 days after
16 the Supreme Court issues a decision in <u>Dimaya</u>.

17      This recommendation is not an order that is immediately appealable to the Ninth
18 Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of
19 Appellate Procedure, should not be filed until entry of the district court's judgment. The
20 parties shall have fourteen days from the date of service of a copy of this recommendation
21 within which to file specific written objections with the Court. <u>See</u> 28 U.S.C. § 636(b)(1);
22 Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure. Thereafter, the parties have fourteen
23 days within which to file a response to the objections. Pursuant to Rule 7.2, Local Rules of
24 Civil Procedure for the United States District Court for the District of Arizona, objections to
25 the Report and Recommendation may not exceed seventeen (17) pages in length. Failure
26 timely to file objections to the Magistrate Judge's Report and Recommendation may result
27 in the acceptance of the Report and Recommendation by the district court without further
28 review. <u>See</u> <u>United States v. Reyna-Tapia</u>, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely

1  to file objections to any factual determinations of the Magistrate Judge will be considered a
2  waiver of a party's right to appellate review of the findings of fact in an order or judgment
3  entered pursuant to the Magistrate Judge's recommendation. <u>See</u> Rule 72, Federal Rules of
4  Civil Procedure.

DATED this 10th day of November, 2016.

*Michelle H. Burns*
Michelle H. Burns
United States Magistrate Judge